EVIDENTIARY RULING ON THE ADMISSIBILITY OF A DECISION RENDERED BY THE SOCIAL SECURITY ADMINISTRATION
1. Counsel for the defendants has objected to the admissibility of the July 30, 1996 Social Security Administration Decision awarding benefits to the plaintiff. This objection is HEREBY SUSTAINED.
 ***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. A black index marked as exhibit 1 stipulated was received into evidence.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a fifty-two year old female with a ninth grade education. Plaintiff had received formal training at Sandhills Community College in the field of electronics and nursing. Plaintiff is licensed as both a cosmetologist and a notary public. Plaintiff's work history includes working as a beautician, nurse's aide, shirt inspector, waitress, and cook.
2. Plaintiff had been employed by the defendant-employer as an inspection and production worker using a label gun. Plaintiff contracted tenosynovitis in her right thumb as a result of the use of this label gun. The parties entered into a Form 21 agreement that was approved by the Industrial Commission on November 28, 1994. Plaintiff eventually underwent a surgical release of the right trigger thumb. Dr. Brenner performed this surgery on October 12, 1994.
3. Following the trigger release surgery, Dr. Brenner released plaintiff to return to work on January 9, 1995. Dr. Brenner advised Brenda Garner, Human Resource Manager for the defendant-employer, to offer the plaintiff a position with restrictions if possible. Dr. Brenner did not specify any restrictions nor did he require any restrictions at the time of this release to return to work. The defendant-employer offered the plaintiff a permanent position as an automatic sewing machine operator. Plaintiff had to use her right hand to perform the job duties required in this job position. Plaintiff experienced pain in her right hand while using scissors when she performed the job duties required by this position. After examining plaintiff's right hand, Dr. Brenner specifically restricted plaintiff from using her right hand to do repetitive scissoring. He further restricted plaintiff from performing any production jobs.
4. Pursuant to the restrictions set forth by Dr. Brenner, the defendant-employer provided a variety of non-production jobs to the plaintiff. From January 17, 1995 to March 31, 1995, plaintiff performed the job tasks provided by the defendant-employer.
5. From January 17, 1995 to March 1, 1995, plaintiff counted buttons and labels. Plaintiff laid both of her arms flat down on the table. This job did not involve the plaintiff constantly using her elbows to lean or rest on the surface where she was doing the counting. She only leaned on the table with her elbows a few times. She would slide the coins with her fingers from point A to point B. She did not flex and extend her right elbow in order to move the coins from point A to point B. Within the first four days of performing this job activity, plaintiff began to experience numbness and tingling in the fourth and fifth fingers of her right hand.
6. An April 25, 1995 nerve conduction study revealed that plaintiff had sustained cubital tunnel syndrome in her right elbow. Cubital tunnel syndrome is a condition resulting from a constriction or impingement on the ulnar nerve as it crosses the elbow. The numbness and tingling in the fourth and fifth fingers of plaintiff's right hand are symptoms consistent with cubital tunnel syndrome.
7. Cubital tunnel syndrome can result from leaning on the elbow in a fixed position for a long period of time. It can result from scar tissue that impinges on the ulnar nerve as it passes through the cubital canal. It can result from a direct blow or trauma to the nerve. It can result from repetitive flexion and extension of the right elbow. None of the job tasks performed by the plaintiff from January 9, 1995 to March 31, 1995 involved any of these factors that could result in compression of plaintiff's ulnar nerve in her right elbow.
8. There are no specific precipitating causes which are known to have caused the plaintiff to develop cubital tunnel syndrome.
9. There is insufficient expert evidence of record to support a finding that any of the job tasks performed by the plaintiff from January 1995 to March 31, 1995 placed the plaintiff at an increased risk in contracting cubital tunnel syndrome as compared to the public not so equally exposed. Dr. Subin did opine that if the plaintiff leaned on her elbows for an extended and long term period of time, plaintiff would have been at an increased risk of contracting cubital tunnel syndrome. Even assuming that plaintiff did lean on her elbows while counting the buttons, this opinion is insufficient in that it does not compare the risk that plaintiff may have been exposed in contracting cubital tunnel syndrome with the risk that the general public might have in contracting cubital tunnel syndrome.
10. Plaintiff's prior problems with carpal tunnel syndrome and prior trigger thumb syndrome did not contribute to the development of cubital tunnel syndrome in plaintiff's right elbow.
11. From March 15, 1995 to July 19, 1995, plaintiff was unable to earn any wages as a result of her cubital tunnel syndrome.
12. As of April 13, 1995, plaintiff reached maximum medical improvement with regard to the tenosynovitis that plaintiff had sustained in her right thumb.
13. On May 15, 1995, plaintiff underwent cubital tunnel release surgery in her right elbow. On June 23, 1995, Dr. Brenner projected that plaintiff would be able to return to work on July 19, 1995. Dr. Brenner released plaintiff to attempt a trial return to work on July 19, 1995.
14. On July 19, 1995, plaintiff began training for the permanent position of sewing machine operator. This job required plaintiff to repetitively use her right hand. After about four hours, plaintiff stopped working. Following this unsuccessful return to work, Dr. Brenner restricted the plaintiff from doing any repetitive work requiring the use of plaintiff's right hand on a permanent basis.
15. The defendant-employer was unable to offer the plaintiff a permanent position that did not require the repetitive use of plaintiff's right hand and did not require that plaintiff have to meet any production goals.
16. Plaintiff's inability to earn wages after March 15, 1995 to the time of the hearing in this matter was the result of the cubital tunnel syndrome that she sustained.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. In 1995, plaintiff's cubital tunnel syndrome did not result from an injury by accident arising out of and in the course of plaintiff's employment with the defendant-employer.
2. Plaintiff has no occupational disease, and no disability related to causes and conditions which are characteristic of and peculiar to plaintiff's employment with the defendant-employer. N.C. Gen. Stat. § 97-53(13).
3. Plaintiff has not sustained a change of condition resulting from her compensable tenosynovitis in her right hand. N.C. Gen. Stat. § 97-47.
4. Plaintiff is, therefore entitled to no additional compensation under the provisions of the North Carolina Workers' Compensation Act.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiff's claim is HEREBY DENIED.
2. Defendants shall pay an expert witness fee in the amount of $150.00 to Dr. Edwards, $325.00 to Dr. Brenner, $160.00 to Steven Carpenter and $235.00 to Dr. Subin.
3. Each side shall pay its own costs.
 S/ ______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING WITHOUT WRITTEN OPINION:
S/ ____________ THOMAS J. BOLCH COMMISSIONER
DCS:bjp